MARIA FARNUM *versus* MARTHA H. BARTLETT, *Adm'x.*

A bond, given for her support, to a married woman, by a person other than her husband, cannot be considered invalid as being in contravention of good morals and tending to impair the obligations of the marriage covenant, unless it appear that it was given, or had a tendency, to induce a separation between husband and wife.

Where a bond stipulated that the obligor "shall fully and completely maintain the obligee, as her comfort and convenience may require, during her natural life, and shall permit the said obligee to occupy for her own sole use and benefit, the east chamber in the dwellinghouse of the obligor, — *provided* she shall always, when requested, and able, eat at the table of the said obligor, and personally occupy said chamber;" — *Held,* —

1. That the plaintiff might waive her right to support under the bond;

2. That, so long as she lived away from the obligor's house, without making any claim for support, she thereby waived her right to support;

3. That a neglect to fulfil, after claim made, and a denial of the validity of the bond, constitute a breach thereof;

4. If the administratrix would avail herself of the proviso in the bond, she must "*make the request*" when a fulfilment of the bond is demanded.

ON REPORT.

DEBT on a bond dated Aug. 30, 1839, given by Stephen

Farnum *v.* Bartlett.

Bartlett, the defendant's intestate, to the plaintiff. The condition of the bond appears in the opinion of the Court.

The defendant was admitted to be administratrix upon the estate of the intestate, who died Aug. 29, 1861.

The plaintiff was introduced and testified :—I am the sister of Stephen Bartlett, and made his house my home for several years after the date of the bond ; did not stay there long after Stephen was married ; made Stephen's my home until 1850, when I went to Louisiana ; returned in 1851 ; on my return went to Stephen's, staid a week, then left ; have lived there none since to speak of. I called on the defendant in the winter of 1862 ; told her I had come to live with her ; she replied that she was going away to-morrow, that she had sent her girl away ; was going to leave her boys alone ; and that the bond was not good, as Stephen's property had been transferred since the bond was given by Stephen ; nothing further said by her ; I then left ; returned with Mr. Bean ; she has sent me no word since.

*Cross-examined.*—I have not been there since, nor seen her to speak to her since ; was not present when the bond was executed ; was a married woman at the date of the bond ; did not then, and have not since, lived with my husband, who is still living ; got divorced from him on my return from the South ; did not live much at Stephen's after 1851 ; went there and staid a short time on my return from the South ; visited there, not very frequently, until his decease ; staid there one night and ate at his table ; always on good terms with Stephen.

*Marina Bartlett,* called by the plaintiff, testified :—I am sister of the plaintiff ; Stephen was our brother ; Maria went to Louisiana in 1850, and returned in 1851, when she came to our house and stopped awhile. I told Stephen that Maria was going to his house to make it her home. Said he was sorry ; that, if he was willing, his wife would not be. Told Maria of this. She did not go.

*Eliphas Bean,* introduced by plaintiff, testified :—the plaintiff is my wife's mother ; went with plaintiff, Jan. 18,

or 19, 1862, to see defendant; gave defendant a copy of the bond, and told her my mother had come over to live with her according to the bond; she replied, she was going away, had sent her girl away to stay while she was gone to Probate Court; defendant said, you know the bond is good for nothing on account of his property having been transferred; this paper, marked A, is in my handwriting; I presented and read it to her, Sept. 9th, 1862; would give me no reply or direct answer, paid me no money, made me no offer, and made no talk with me.

*Defendant,* introduced as a witness, and testified: — plaintiff is my sister-in-law, is sister to my husband, Stephen Bartlett; he died Aug. 29, 1861; I am administratrix on his estate; was appointed Sept. 10, 1861; have closed up the administration; I settled my last account of administration, Sept. 10, 1862. In January, 1862, Bean called with the plaintiff at my house, said he had brought his mother over to live with me awhile; he threw a copy of the bond into my lap; I said, I suppose you know this bond is good for nothing. Bean then said to me, you have rejected her. I said no, Mr. Bean, I have not, I know not but that the bond is worth the dollars and cents.

Bean came again, in Jan. 1862, in about a week after I returned from Probate Court. He came again in Sept., 1862, and Adam Willis came with him. Bean said he wanted to compromise, that he would leave it out to the appraisers. I told him I would not leave it out; that I would fulfil the obligations of the law as far as I was obliged to; not a word was said about charging for her board at that time.

*Eliphas Bean,* recalled by the plaintiff. I called on the defendant, Nov., 1861, and told her I saw her advertisement in the paper as administratrix, and it was her request to have all who had demands to exhibit them. I took the bond out, and told her of it; read bond to her. She asked who made it out. I told her I thought it was Esq. Frye, it was his handwriting. She asked me if I thought the bond could

not be picked to pieces. I told her that I could not tell that; I did not see anything in it that looked so; that Frye was a man who generally did business pretty correct. I believe she said she should look round and see; and if it was so ordered that she should take care of her, God would bless her.

(A.)

"Mrs. Martha H. Bartlett, administratrix on the estate of Stephen Bartlett. Please pay E. C. Bean, sixty-eight dollars, being for my board thirty-four weeks, from Jan. 20, 1862, to Sept. 9, 1862, and I will allow the same on the bond for my maintenance which I hold against your late husband's estate. "Maria Farnum."

"Bethel, Sept. 8, 1862."

The case was reported with the following agreement: —

If, in the opinion of the Court, there has been no breach of the bond, the plaintiff was to become nonsuit and judgment rendered for costs for defendant.

But, if there has been a breach, the defendant was to be defaulted,—judgment to be entered for the penalty of the bond with costs.

*Hammons,* for the plaintiff.

*Howard & Gibson,* for the defendant.

The opinion of the Court was drawn by

BARROWS, J.—This is an action of debt on a bond in the sum of $200, dated Aug. 30, 1839, and given by Stephen Bartlett, the defendant's intestate, to his sister, the plaintiff, a married woman, at that time living separate from her husband, from whom she has since obtained a divorce.

"The condition of this obligation is such that if the said Stephen, his heirs or assigns, shall fully and completely provide for, maintain and support the said Maria in sickness and health, as her comfort and convenience may require, for, and during her natural life, and shall permit the said Maria to occupy for her own sole use and benefit, the east chamber in the dwellinghouse now occupied by the said

Stephen, with the right of passing to and from the said chamber by the usual and ordinary means and passageways, so long as she shall live, — provided she shall always, when requested and able, eat at the table of the said Stephen, and personally occupy the said chamber, — then this obligation to be void, otherwise," &c.

The first objection to the plaintiff's right to recover, that is relied upon in argument, is that the bond is invalid as being in contravention of good morals and tending to impair the sacred obligations of the marriage covenant, because it is given to a married woman and provides for her separate maintenance. Such a bond, given to induce a separation between husband and wife, might be liable to that objection, but the single fact, that the plaintiff was a married woman at the time of the giving of the bond, is not a sufficient foundation for the assumption that such was the intention or effect. On the contrary it appears that, at the time of the giving of the bond in suit, the plaintiff was living separate from her husband, and that she subsequently procured a divorce from him, indicating that the separation was not by her fault. The objection cannot prevail. Has there been a breach of the bond?

The true construction of this obligation would seem to be, that the obligor, while binding himself fully and completely to provide for, maintain and support the obligee as her comfort and convenience might require during life, and to permit her to occupy a certain room in his house, reserved to himself an option whether to afford that support to her at his own table as one of his family, or in some other manner. In other words, she was to have the use of the east chamber if she chose to occupy it personally, and he was not to be bound to supply her at a separate table, but she, if able, *and he requested it*, was to eat at the table of the said Stephen, and personally occupy the said chamber.

He seems to have contemplated the possibility, that circumstances might arise which would render it more agreeable to him to afford the required support elsewhere than at

his own board, but he took care to stipulate that she should not be at liberty to claim it elsewhere if he chose to have her there. What were the reciprocal rights and duties of the parties as to notice and request?

The holder of such a bond might or might not choose to rely on it for her support. She might have other means to which she would prefer to resort. While health and strength remained to her, she might prefer to exercise body and mind in some useful and profitable occupation, rather than to eat the bread of idleness. When she chose, or in the language of the bond, "as her comfort and convenience might require," she might call on the obligor.

This right to a support was a privilege which she might waive by words or acts, whenever and so long as she chose. It appears, that, after making her home in the obligor's family for some years next succeeding the date of the bond, she made a journey to Louisiana, and, after remaining there some time, returned to this State and lived with her son-in-law for some years, and subsequently visited Missouri in the lifetime of the obligor, and as it would seem without making any claim upon him for her support in any form. Thus doing, she must be considered as waiving for the time her claim for support, and his failure to furnish it under those circumstances, would constitute no breach of the bond. A reasonable construction of the instrument would not require him to follow her out of the State, when she voluntarily removed herself from her previous home, nor to tender to her a maintenance to which she made no claim.

But when the bond was presented to this defendant, as administratrix of the obligor, by the plaintiff's agent, the case assumed a different aspect. He testifies, and she does not deny, *that* he called upon her in November, 1861, after her appointment as administratrix, informed her that he had seen her published request for all who had demands to exhibit them ; *that* he produced this bond and read it to her. The conversation that ensued shows that she understood that a call was made upon the estate for the support of the

obligee, a support which she indicated no readiness to afford unless she should find herself legally compelled to do it. On the contrary, both at that time and when the plaintiff subsequently presented herself with her agent, the defendant, to say the least, expressed doubts about her liability or the validity of the bond, and plainly showed a disposition and intention to test the question legally.

If she would have availed herself of the proviso in the bond that the obligee should, "*when requested,* and able, eat at the table of the said Stephen, and personally occupy the said chamber," she should have made the *request.* She has never made such request, and she refused to pay the subsequent order given for the payment of the individual who furnished board, after the support had been thus claimed. There has been a manifest breach of the bond. Upon the whole, it is probable that it will be for the comfort and advantage of both parties, as it certainly is in accordance with the legal rights of the plaintiff, that there should be, according to the stipulations in the report by which the case is submitted to us for decision,

*Judgment for the plaintiff for $200 and costs.*

APPLETON, C. J., CUTTING, DAVIS, WALTON and DICKERSON, JJ., concurred.